FILED IN CHAMBERS
U.S.D.C. Atlanta

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAR 29 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

RONNIE A. EVANS, SR.,

        Plaintiff,

    v.

GEORGIA PEACE OFFICER
STANDARDS AND TRAINING
COUNCIL, et al.,

        Defendants.

CIVIL ACTION

NO. 1:05-CV-2579-RLV

O R D E R

This is an action pursuant to 42 U.S.C. §§ 1983 and 1985(3).
Pending before the court is the defendants' motion to dismiss [Doc.
No. 4].

## I. Factual Background

The following facts are gleaned from the court's review of the
record and the parties' submissions.  The plaintiff, Ronnie A.
Evans, alleges that his First Amendment and Fourteenth Amendment
substantive due process rights were violated when the Georgia Peace
Officer Standards and Training ("POST") Council notified him that
his certification as a peace officer was subject to revocation.

The plaintiff commenced his career in law enforcement with the
Sparta Police Department in Sparta, Georgia, in 1978.  In 1992, he
became the Chief of Police of the Police Department there.
Sometime after he became Chief of Police, the plaintiff's brother,
William Evans Sr., became Mayor of Sparta.  Also during the course

of the plaintiff's tenure as Chief of Police, another of the plaintiff's brothers, Tommy Evans, also served as a Captain of the Sparta, Georgia, Police Department.

According to the plaintiff, while serving in the capacity of Chief of Police, he and his brother Tommy Evans became involved in an "adversarial relationship with City Councilmembers." This dispute with certain members of the City Council resulted in the plaintiff filing a lawsuit against the City of Sparta,

> alleging among other things, that the Sparta Police Department was deficient in terms of manpower and equipment, in addition the City Council was abusive of [the plaintiff] and Captain Evans by requiring them to work excessive hours. Moreover, it was alleged that these shortcomings posed a menace to the safety and well being of the citizenry of Sparta and general public and thereby became a matter of major public concern.

The plaintiff also alleges that a certain Councilmember physically attacked and defamed him in public in October 1998. This Councilmember had business and blood ties to other members of the Sparta City Council. The plaintiff alleges that in 2000 certain local citizens and Councilmembers who "harbored animus towards the [p]laintiff and his herein described siblings" contacted the Federal Bureau of Investigations ("FBI") and the Georgia Bureau of Investigations ("GBI").

Thereafter, a criminal investigation of the plaintiff and his siblings began. This criminal investigation was partly conducted by defendant Jerry Whidby, ("Whidby") who was a GBI Investigator. According to the plaintiff, defendant Whidby was unable to find any

2

basis to bring criminal charges against either the plaintiff or his siblings.  After his investigation, defendant Whidby contacted POST Council and presented POST Council with his findings.   The plaintiff does not allege that defendant Whidby told POST or its investigators how to use his findings.

The plaintiff alleges that an investigator at POST Council, defendant Julie Lewandowski ("Lewandowski"), either conducted a faulty investigation into the allegations against him or did not conduct an independent investigation at all.   According to the plaintiff, Lewandowski included allegations contained in the case summary provided by Whidby in her own case summary.  The plaintiff alleges that some of the allegations contained in that case summary were without merit.   According to the plaintiff, the other allegations contained in the case summaries were based on unreliable information since "[s]everal of the interviewees had been in an adversarial relationship with [the plaintiff] and were biased against [the plaintiff]."

On its face, POST Council's case summary implicated the plaintiff and his two siblings in a conspiratorial scheme to defraud the City of Sparta out of money.  Relying upon the information provided by Whidby and prepared by Lewandowski, POST Council found probable cause for the charges of theft by deception and theft by conversion.  On or about October 7, 2003, POST Council issued a Notice of Adverse Action informing the plaintiff that

there was a pending vote to revoke his certification. Sometime thereafter, POST Council released the charges against the plaintiff and his siblings to the media. According to the plaintiff, the local newspapers reported that his certification had already been revoked and suggested that POST Council had already proven the charges against him.

In order to defend himself against the charges contained in POST Council's case summary, the plaintiff requested a hearing in order to present evidence in his own defense. During a pre-trial conference defendant Wayne Melton ("Melton"), who was Director of the Certification and Hearings Division of POST Council, allegedly stated that he saw a "whole lot of smoke but he didn't see a gun anywhere in sight." According to the plaintiff, POST Council proceeded with his "prosecution" in the face of evidence that refuted the charges against him.

In February 2005, the plaintiff was given a hearing on his appeal of the revocation of his certification.[1] The plaintiff had a hearing before an Administrative Law Judge ("ALJ""). After the hearing, the ALJ allegedly "acquitted" the plaintiff of all charges. The plaintiff states that the ALJ's decision was subsequently adopted by POST Council.

---

[1] The plaintiff alleges that in the Notice of Adverse Action POST Council characterized his certification as being subject to revocation, but in subsequent proceedings POST Council indicated that his certification had already been revoked and the appeal placed a stay on the revocation.

4

According to the plaintiff, he sustained irreparable injury to his reputation, and the administrative hearing conducted by the ALJ was not an adequate remedy to redress his injury.  Furthermore, the plaintiff alleges that he has no adequate remedy at state law to redress the harm he sustained as the result of "the malicious use and abuse of civil process perpetrated upon [the plaintiff] by [the defendants]."  In his complaint, the plaintiff alleges that this case arises under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).  Specifically, the plaintiff alleges that the defendants

> were acting under color of state law, custom, practices, and policies when they conspired to engage in malicious use of the civil process to inflict punishment upon and retaliate against [the plaintiff] because of [the plaintiff's] political, familial, and occupational affiliations and because of [the plaintiff's] race in violation of [the plaintiff's] 1st Amendment and 14th Amendment Rights

On February 21, 2006, the defendants moved to dismiss the complaint [Doc. No. 4].  In their motion to dismiss, the defendants argue that (1) the plaintiff's claims against POST Council and all of the individually-named defendants in their official capacities are barred by the Eleventh Amendment, (2) the plaintiff failed to state and properly plead a claim of conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3), and (3) the defendants are entitled to quasi-judicial immunity for claims against POST Council members in their individual capacities.  In their reply brief, the defendants also argue that even if this court were to

5

assume that everything that the plaintiff has alleged is true he still has failed to state a constitutional claim against defendant Whidby.

## II. Standard of Review

A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  On a motion to dismiss, the facts stated in the plaintiff's complaint and all reasonable inferences are taken as true. See Stephens v. Department of Health and Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). Although the court must take the allegations in the complaint as true when reviewing motions to dismiss, it is not permitted to read into the complaint facts that are not there. Papasan v. Allain, 478 U.S. 265, 286 (1986).[2]

## III. Legal Analysis
### A. Eleventh Amendment Immunity

In this case, the plaintiff is suing POST Council and a number of POST Council officials and investigators, in their official

---

[2] On pages 2-4 of his response, the plaintiff makes several "factual" allegations that are nowhere in the body of the complaint.  On a motion to dismiss, the court "may look only to the facts alleged in the naked complaint, and not beyond." Emory v. Peeler, 756 F.2d 1547, 1550, n. 3 (11th Cir. 1985).  Therefore, the court disregarded any "factual" allegations made in the body of the plaintiff's response to the defendants' motion to dismiss that were not made within the body of his complaint.

capacities and individual capacities, for damages.[3]  Additionally,
the plaintiff has named Whidby, an Investigator of the GBI, as a
defendant to this suit.   The defendants argue that any claims
against POST Council and the individually-named defendants in their
official capacities are barred by the Eleventh Amendment of the
United States Constitution.[4]  This court agrees.

The Eleventh Amendment provides a constitutional limitation on
federal judicial power based on the principle of sovereign
immunity. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89,
98 (1984).   "While the Amendment by its terms does not bar suits
against a State by its own citizens, [the Supreme] Court has
consistently held that an unconsenting State is immune from suits
brought in federal courts by her own citizens as well as citizens
of another State." <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-663 (1974).

---

[3] In his complaint, the plaintiff has named the following POST
Council officials and investigators: Bradley L. Pope, who was the
Director of Investigation Division of POST Council, Julie
Lewandowski, who was an Investigator at POST Council, Ken Vance,
who was the Chairman of the Probable Cause Committee, and Wayne
Melton, who was Director of the Certification and Hearing Division
of POST Council.

[4] This court discusses the Eleventh Amendment immunity of POST
Council and the defendants sued in their official capacity only
because that is the argument raised by those defendants.   However,
under the proper analysis, the court would not even reach the
immunity issue because POST Council and the defendants in their
official capacity (being treated as an arm of the state) are not
"persons" within the meaning of section 1983. <u>Will v. Michigan
Dept. of State Police</u>, 491 U.S. 58 (1989).  Since these defendants
are not even capable of being sued, whether they have immunity is
a moot issue.

Absent consent from the state, a state and its agencies may not be directly sued regardless of the relief sought by the plaintiff. See Kentucky v. Graham, 473 U.S. 159, 167, n. 14 (1985).

POST Council is an agency of the State of Georgia that is administratively assigned to the Department of Public Safety ("DPS"). O.C.G.A. § 35-8-3(e).  POST Council has the authority to discipline certified peace officers. O.C.G.A. § 35-8-7.1.[5]  There is no evidence in the record that POST Council either consented to suit or waived its immunity.  Therefore, POST Council must be dismissed from this action.[6]

With respect to the individually-named state officials, the Eleventh Amendment bars federal suits seeking damages against them

_____

[5] POST Council can exercise its disciplinary authority upon determination that an officer has knowingly made misleading, deceptive, untrue, or fraudulent representations in the practice of being a peace officer. O.C.G.A. § 35.8-7.1(a)(2).  Moreover, the POST Council may revoke a peace officer's certificate where it is determined that the officer engaged in any unprofessional, unethical, deceptive or deleterious conduct or practice. O.C.G.A. § 35.8-7.1(a)(6).

[6] In the plaintiff's response, the plaintiff argues citing to Glover v. Alabama Dept. of Corrections, 734 F.2d 691 (11th Cir. 1984), "While POST is an arm of the State of Georgia, POST can be named as a Defendant in a 1983 action for the limited purpose of assessment of cost and attorney's fees."  However, the Eleventh Circuit's decision in Glover was reversed and vacated by the United States Supreme Court. See Alabama Dept. of Corrections v. Glover, 474 U.S. 806 (1985).  On remand to the Eleventh Circuit, the Eleventh Circuit vacated the district court's judgment awarding attorney fees against the State and remanded the case to the district court for further consideration in light of Kentucky v. Graham, 473 U.S. 159 (1985). See Glover v. Alabama Dept. of Corrections, 776 F.2d 964 (11th Cir. 1985).

8

in their official capacities but not in their individual capacities. Hobbs v. Roberts, 999 F.2d 1526, 1528 (11th Cir. 1993). The Eleventh Amendment bars suits by private parties in the federal court against a state, its agencies or employees sued in their official capacities "seeking to impose a liability which must be paid from public funds in the state treasury." See Edelman, 415 U.S. at 663. Insofar as the plaintiff seeks damages from the individually-named defendants in their official capacity, the plaintiff's suit in effect is a suit against the State and is also barred.[7] Id. Therefore, all of the plaintiff's claims against the individually-named defendants in their official capacities are dismissed.

## B. Failure to State a Claim of Conspiracy in Violation of 42 U.S.C. § 1985(3)

The elements of a cause of action under § 1985(3) are (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1146-47 (11th Cir. 1996). The

---

[7]A review of the plaintiff's prayer for relief indicates that the plaintiff does not seek any prospective injunctive relief.

purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law; as such, a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private, encroachment. Trawinski v. United Technologies, 313 F.3d 1295, 1299 (11th Cir. 2002).

Under the first element of a § 1985(3) claim, a plaintiff must show "an agreement between the members of the alleged conspiracy." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1412 (M.D. Ala. 1998). Although the existence of a conspiracy may be supported by circumstantial evidence, there must be some indication that the individuals were acting, in some sense, in concert. "Where there is no indication of an agreement to act against the . . . rights of an individual there is no cause of action under § 1985." Id.

The plaintiff alleges, "Defendants singled [the plaintiff] out for prosecution because of his racial classification, and said prosecution was motivated by racial animus towards [the plaintiff] and [the plaintiff's] racial group." In response, the defendants argue that the plaintiff has failed to state a claim of conspiracy under § 1985 because the plaintiff has failed to plead that there was an agreement among the defendants to deprive the plaintiff of his constitutional rights. Moreover, the defendants argue that

10

"[the plaintiff] has only sets [ sic] forth the vaguest of allegations of a conspiracy without any factual basis to support these contentions."

In response, the plaintiff argues that a "conspiracy can be inferred from POST's use of the GBI's false case summary as a way of injuring [the plaintiff] for not having assisted in the investigation of Mayor Evans with a view towards criminal prosecution." However later in his response, the plaintiff appears to concede that his conspiracy claim has not been pled with requisite specificity required when he states, "If the complaint is not sufficiently specific as alleged, the complaint can be amended to be more specific." Yet, the plaintiff has failed to file an Amended Complaint to rectify his admitted pleading deficiencies.

Having reviewed the complaint, the court concludes that the plaintiff has failed to allege that all or some of the defendants had an agreement to deprive the plaintiff of his constitutional rights because of their racial animus. Moreover, the plaintiff has failed to allege or identify himself as a member of a minority group. The plaintiff's failure to allege an agreement between the defendants and that he is a member of a minority group is fatal to the plaintiff's § 1985(3) claim. Therefore, the court grants the defendants' motion to dismiss the plaintiff's § 1985(3) claim against all of the defendants.

11

## C. Quasi-Judicial Immunity

Citing to the United States Supreme Court's decision in Butz v. Economou, 438 U.S. 478 (1978), the defendants argue that the plaintiff's claims against the individually-named POST Council officials and investigators in their individual capacities should be dismissed because those officials and investigators of POST Council are entitled to quasi-judicial immunity. However, the defendants have not cited, nor has this court found, a case directly on point. Therefore, it appears that the issue of whether the officials and investigators of POST Council are entitled to quasi-judicial immunity is a case of first impression.

Judges acting in their judicial function are accorded absolute immunity from suit under § 1983. See Cleavinger v. Saxner, 474 U.S. 193, 199 (1985). Quasi-judicial immunity may be extended to those administrative or executive officials who perform functions closely associated with the judicial process. Id. at 200. However, the application of absolute immunity is limited, and the proponent of a claim of absolute immunity bears the burden of establishing the justification for an application of absolute immunity. See Butz, 438 U.S. at 506-07. See also Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993). In fact, the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. See Burns v. Reed, 500 U.S. 478, 486-86 (1991)(noting that the application of absolute

12

immunity is used sparingly).

Despite the fact that the presumption favors the application of qualified immunity rather than absolute immunity, the Eleventh Circuit has previously held that individual members of Georgia's Board of Pardons and Paroles were entitled to quasi-judicial immunity. Fuller v. Georgia State Bd. of Pardons & Paroles, 851 F.2d 1307, 1310 (11th Cir. 1990). In Holmes v. Crosby, 418 F.3d 1256, 1258-59 (11th Cir. 2005), the Eleventh Circuit recently extended the protection of quasi-judicial immunity to an individual parole officer who gave testimony during a parole revocation hearing.[8] In Hicks v. Georgia State Board of Pharmacy , 553 F.

_____

[8]Citing to Scotto v. Almenas, 143 F.3d 105 (2nd Cir. 1998), the plaintiff argues, "Parole officers are not entitled to absolute immunity under all circumstances, but only under those circumstances that can be considered judicial functions." However, the plaintiff fails to address the recent Eleventh Circuit precedent of Holmes v. Crosby, 418 F.3d 1256, 1258-59 (11 th Cir. 2005), which broadened the scope of "judicial functions" to include the testimony of a parole officer who testified at a revocation hearing.

Additionally in his response to the defendants' motion to dismiss, the plaintiff argues that when Lewandowski was engaged in "an investigation and fact-finding, Defendant Lewandowski did not perform a function intimately related or closely analogous to the function of a judge." However, the plaintiff's argument misses the mark because quasi-judicial immunity may also be extended to those administrative or executive officials who perform functions closely associated with the judicial process. See Cleavinger, 474 U.S. at 200. Lewandowski's actions of investigating and complying a case summary are analogous to a probation officer who prepares a pre-sentence investigative report. See Hughes v. Chesser, 731 F.2d 1489, 1490 (11th Cir. 1984)(holding that probation officers who prepare pre-sentence investigation reports are entitled to absolute immunity.)

13

Supp. 314 (N.D. Ga. 1982), Judge Orinda D. Evans found that members of the Georgia State Board of Pharmacy were entitled to absolute immunity from damages when the members of the Board of Pharmacy refused to reinstate the license of a former-pharmacist. See also Howard v. Miller, 870 F. Supp. 340 (N.D. Ga. 1994)(holding that claims against the members of Georgia's Board of Medical Examiners were barred). Similarly, Judge J. Owen Forrester in Jackson v. Bridges, No. C81-1874A, (N.D. Ga. June 29, 1982) held that members of the Composite State Board of Medical Examiners were entitled to absolute immunity in the performance of their functions when they initiated and adjudicated proceedings against licensees.[9]

In evaluating whether an individual or a administrative body should be granted quasi-judicial immunity, a court must determine whether the administrative body shares "enough of the characteristics of the judicial process that those who participate in such adjudications should also be immune from suit for damages." See Butz, 438 U.S. at 513.[10]

---

[9] In his response, the plaintiff argues, citing to Manion v. Michigan Bd. of Medicine, 765 F.2d 590 (6th Cir. 1985), that "it has been held that members of a state medical licensing board performing its licensure functions, including investigations and the initiation of disciplinary proceedings and holiday hearing thereon, are not entitled to any form of absolute immunity." However, Manion was subsequently overruled by Watts v. Burkhart, 978 F.2d 269, 270 (6th Cir. 1992) and is no longer good law.

[10] It is significant that the plaintiff totally failed to address Butz and its progeny in his response to the defendants' motion to dismiss.

14

In order to perform this analysis, the Supreme Court has articulated six factors that a court should address when making its determination.   These factors include:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation;
> (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling constitutional conduct;
> (c) insulation from political influence;
> (d) the importance of precedent;
> (e) the adversarial nature of the process;
> (f) the correctability of error on appeal.

Cleavinger, 474 U.S. at 202.

When evaluating these factors, none of these factors is controlling.   Rather, a court should considers the totality of the factors with regard to the functions of the individual or entity in question to reach a determination on absolute immunity. See Berkos v. Village of Wellington, 2003 WL 21383886, *2 (S.D. Fla. 2003).

In their reply brief in support of their motion to dismiss, the defendants applied each of the Cleavinger factors to the POST Council and presented a compelling case for the application of quasi-judicial immunity for the members and investigators of the POST Council.   Based upon the arguments presented by the defendants, the court concludes that an application of quasi-judicial immunity is appropriate in this case.

In reaching this conclusion, the court also found the decision of Hicks instructive.   In Hicks, Judge Evans applied Butz to hold that members of Georgia State Board of Pharmacy were entitled to

15

Case 1:05-cv-02579-RLV   Document 7   Filed 03/29/06   Page 16 of 22

absolute immunity for an alleged deprivation of an individual's constitutional rights which arose from the Board's refusal to reinstate an individual's license to practice pharmacy. In deciding that the members of the Board of Pharmacy were entitled to quasi-judicial immunity, Judge Evans examined the statutory responsibilities of the members of the Board of Pharmacy as well as the procedural safeguards accorded to persons subject to proceedings of this agency. Judge Evans concluded that the proceedings of the Board of Pharmacy was sufficiently "judicial" to warrant the protection of <u>Butz</u> immunity.

The responsibilities and safeguards which Judge Evans found determinative are quite similar to those of POST Council. Like the Board of Pharmacy which has the power to issue licenses and discipline members, POST Council has the power to grant certificates or discipline a peace officer. O.C.G.A. § 35-8-7.1. Additionally, POST Council has the power to subpoena witnesses and other evidence. O.C.G.A. § 35-8-7.2(a).[11] Its adjudications and

---

[11] In O.C.G.A. § 35-8-7.2, titled Administrative procedure; hearing; review, provides:

(a) Except as otherwise provided in subsection (b) of this Code section, proceedings of the council in the exercise of its authority to issue any certificate or discipline any peace officer under the terms of this chapter shall be conducted in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act." In all such proceedings the council shall have authority to compel the attendance of witnesses and the production of any book, writing, or document upon the issuance of a subpoena therefor. In any hearing in which the fitness

16

investigations are subject to notice and an opportunity for hearing, and are conducted in accordance with Georgia's Administrative Procedure Act. O.C.G.A. § 50-13-1 et seq.

In cases involving issuance, suspension or revocation of a peace officer's certificate, the proceedings are treated as a "contested case" under Georgia's Administrative Procedure Act. In "contested cases," a formal record is kept, and findings are required based on the record evidence. Furthermore, a full opportunity for cross-examination is afforded, and judicial review of POST Council's final decision is available via O.C.G.A. § 35-8-7.2(b).[12]

---

of a peace officer or applicant is in question, the council may exclude all persons from its deliberation of the appropriate action and may, when it deems necessary, speak to the peace officer or applicant in private.

Although it does not appear that POST Council is bound by precedent when making its determinations as to the fitness of an individual peace officer, the possibility of arbitrary application of its regulations is addressed by the possibility of appeal to either an ALJ or a Georgia state court for a review of its determination.

In this case, the plaintiff appealed the revocation of his certificate via the mandated appeal process. Thereafter, the plaintiff alleges that an ALJ allegedly "acquitted" him of all charges. According to the plaintiff, POST Council adopted the ALJ's opinion and the plaintiff's certificate was reinstated. These facts would tend to indicate that parties subject to POST disciplinary proceedings have a viable process from which to appeal POST's disciplinary determinations.

[12] Pursuant to O.C.G.A. § 35-8-7.2(b),

Proceedings for review of a final decision of the council shall be instituted by filing a petition within 30 days

In addition to the above, other factors articulated by Cleavinger also favor the application of quasi-judicial immunity to the members and investigators of POST Council. Specifically, the threat of harassment or intimidation is great. The investigators and members of POST Council must independently investigate and determine whether to exercise its authority to issue, revoke, or discipline a peace officer's certifications. The defendants argue, "POST Council could be paralyzed or at least severely inhibited, by the possibility that every decision or action that they take could result in litigation against its members or agents individually as has occurred here." The court agrees.

Additionally, the members and investigators of POST are sufficiently shielded from the political process to insure that their decisions are not motivated by political presures. POST Council members are not directly elected to their positions. Pursuant to O.C.G.A. § 35-8-3(b)(1)-(3), the Board Members are appointed to their positions by the Governor and serve four, three, or two year terms on a state-wide basis. The appointment of the POST Council members on a statewide basis sufficiently shields the officials from the political pressure faced by directly elected politicians such as mayors and council members.

---

after the service of the final decision of the council or, if a rehearing is requested, within 30 days after the decision thereon. The petition shall be filed in the superior court of the county of residence of the petitioner.

Moreover, there is no question that the proceedings are adversarial in nature. The plaintiff, who was party to POST Council's proceedings, had functionally the same protections as he would have been accorded in a courtroom pursuant to O.C.G.A. § 50-13-13. In addition to the due process protections mentioned above, the plaintiff as a party to the proceeding was represented by counsel, presented testimony and evidence on his own behalf, and had the opportunity to cross-examine witnesses.

Finally, the plaintiff's rights were protected by his ability to appeal the decision of POST Council not only to an ALJ, but also potentially to a Georgia state court. According to O.C.G.A. § 35-8-7.2 within 30 days of the service of the final decision of the POST Council, an appeal of POST Council's decision may be filed in a Georgia state court. The defendants argue that this appellate protection obviates much of the need for a private suit for damages as a means of preventing unlawful and unconstitutional decisions by the POST Council or individuals acting on its behalf. The court agrees.

For the above reasons and specifically in light of the safeguards built into the POST Council system, the court holds that the members and investigators of the POST Council are absolutely immune via quasi-judicial immunity from damages. Therefore, the court dismisses the plaintiff's claims brought against defendants

19

Pope, Lewandowski, Vance,[13] and Melton, in their individual capacities.[14]

## D. Plaintiff Fails to State a
## Constitutional Claim Against Defendant Whidby

The plaintiff makes the following allegations against defendant Whidby:

20. In 2000, the City of Sparta was under a joint investigation spearheaded by FBI/GBI, who had been contacted by certain local citizens and Councilmembers who had harbored animus towards the [p]laintiff and his herein described siblings.

21. Defendant Whidby targeted Mayor Evans during the aforementioned investigation, but Defendant Whidby was unsuccessful in finding a basis to criminal charges against Mayor Evans and his siblings.

22. During the course of subject joint investigation, Defendant Whidby solicited the assistance of [the plaintiff] in the investigation of Mayor Evans.

23. [The plaintiff] responded stating that he had no knowledge of any wrongdoing or impropriety on the part of the Mayor and that he was supportive of the Mayor because

---

[13] Defendants Pope and Melton appear to have been joined to this suit merely because of their supervisory roles at the POST Council. However, it is a well-established doctrine that respondeat superior does not apply in a § 1983 case. See Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1992). Without any specific allegations of wrongdoing against Pope and Melton, the court would have had sufficient basis to dismiss the plaintiff's § 1983 claims on this basis alone against defendants Pope and Melton in their official and individual capacities.

[14] The plaintiff alleges, "Throughout the administrative hearing itself, POST went against its own rules and procedures in an effort to destroy [the plaintiff's] career in law enforcement." However, the plaintiff did not allege specifically what rules or procedures were violated, and his conclusionary assertions standing alone are insufficient to survive a motion to dismiss.

of this.

24. Defendant Whidby in turn told [the plaintiff] that [the plaintiff] should go ahead and retire.

25. Having been unsuccessful in his efforts to turn up basis for criminal charges being brought against Mayor, [the plaintiff] and Captain Evans, Defendant Whidby contacted POST and presented POST with his findings.

28. [The plaintiff] shows that POST failed to conduct its own investigation and the investigation conducted by Defendant Whidby was not performed with a view towards disclosing violations of POST Rules and Regulations.

29. POST, acting as an agent and coconspirator of the GBI, took the case summary and used it to achieve that which the GBI had been unsuccessful in achieving through the criminal system—to inflict punishment and bring infamy and disgrace upon the [p]laintiff, Mayor Evans and Captain Evans.

32. While the joint investigation did not give rise to criminal charges, POST relying upon the same investigation found probable cause for the charges amounting to charges of theft by deception and theft by conversion.

Taking everything that the plaintiff alleges as true, the defendants argue that the plaintiff has failed to allege that defendant Whidby engaged in actions that constitute a constitutional violation.  The court agrees.

In reaching this conclusion, the court placed significant emphasis on the fact that the plaintiff failed to allege that Whidby told the POST investigator how to use the information he provided.  Moreover, the plaintiff never alleges that Whidby recklessly disregarded or knowingly disregarded the truth in preparing the case summary which he presented to POST Council.

21

Furthermore, the court also placed great significance on the fact that it was POST Council, not Whidby, who decided to take disciplinary action against the plaintiff.

The defendants also argue:

Whidby's lack of criminal findings did not foreclose or end his obligation or duty to present possible unethical activity regarding a law enforcement officer to POST Council.   Nor does Whidby's sole act of providing information to POST Council's investigator from some witnesses that have vendettas against the [p]laintiff violate any of [the plaintiff's] constitutional rights.

This court agrees.  Therefore, the allegations contained in the complaint against Whidby are insufficient to state a constitutional claim against defendant Whidby.   Therefore, all claims against defendant Whidby are hereby dismissed.


### IV. Conclusion

For the above reasons, the defendants' motion to dismiss is **GRANTED** in its entirety and all claims are hereby **DISMISSED** [Doc. No. 4].


SO ORDERED, this 29th day of March, 2006.


ROBERT L. VINING, JR.
Senior United States District Judge